**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ALBERT L. JACKSON,**

        **Plaintiff,**

**-vs-**                                                          **Case No. 6:08-cv-1832-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

### MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for social security disability benefits. For the reasons set forth herein, the decision of the Commissioner is hereby **REVERSED** and the case is **REMANDED** for further proceedings, as set forth herein.

### *PROCEDURAL HISTORY*

On December 8, 2003, Plaintiff applied for Social Security Disability Insurance benefits and Supplemental Security Income, alleging an onset date of October 31, 2003. (R. 18, 86-88).[1] The claims were denied initially and upon reconsideration. Thereafter, Plaintiff requested and received an administrative hearing before an Administrative Law Judge ("ALJ") (R. 500-514). Subsequently, the ALJ issued a denial of benefits determination (R. 404-411). A Request for Review of a Hearing Decision was filed with the Appeals Council (R. 412) and, on April 24, 2007, the Appeals Council remanded the case so that another hearing could be held and a new decision issued (R. 422-425).

---

[1] The index to the Administrative Record reflects that the Supplemental Security Income exhibits were not available for inclusion.

The second hearing was held on August 1, 2007, before a different ALJ (R. 514-547). On October 26, 2007, the ALJ issued an unfavorable decision (R 15-28). The Appeals Council denied Plaintiff's second Request for Review of Hearing Decision, making the ALJ's October 26th decision, the final decision of the Commissioner (R. 6-9).

Plaintiff brings the instant action for review and has consented to the jurisdiction of the United States Magistrate Judge. The matter has been fully briefed and is now ripe for resolution.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims to be disabled due to pain and complications from Sickle Cell anemia (R. 92).

*Summary of Evidence Before the ALJ*

At the time of the second hearing, Plaintiff was thirty nine years old, with a degree in film and video production and prior work experience as a security guard, arcade attendant, arcade manager, movie theater attendant, and movie theater projectionist (R. 27, 98, 120-35, 517-18).

The medical record for the applicable time period is set forth in detail in the decision and, in the interests of privacy and brevity, will not be repeated here except as necessary to address Plaintiff's specific objections. By way of summary, the ALJ determined that Plaintiff had the severe impairments of Sickle Cell Disease; degenerative joint disease of the hips with bilateral hip replacement; and Sickle Cell Retinopathy (R. 20), and the record supports this uncontested finding. In addition to the medical records of Plaintiff's treating providers, the record also includes consultative evaluations, and other opinions from examining and non-examining state agency practitioners. Non-medical evidence includes Plaintiff's testimony at the hearings, and the testimony of a Vocational Expert.

After evaluating the evidence, the ALJ determined Plaintiff's residual functional capacity ("RFC") to include a limited range of sedentary work with the following limitations: (1) walking up

to two city blocks; (2) sitting up to twenty minutes at a time; (3) standing up to ten minutes at a time; (4) lifting and carrying up to ten pounds; (5) alternating sitting and standing; and (6) "does not have good bilateral vision at all times." (R. 23). The ALJ determined that Plaintiff was unable to return to his past relevant work, but by using rule 201.28 of the Medical-Vocational Guidelines ("the Grids") as a framework for decision-making, in conjunction with the Vocational Expert's testimony, the ALJ determined that Plaintiff could perform other work, and was therefore not disabled (R. 27, 28).

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## ISSUES AND ANALYSIS

**The Five Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Here, Plaintiff carried his burden through Step 4, establishing that he was unable to perform his past relevant work. Thus, the Commissioner had the burden of establishing that there was other work he could perform.

Plaintiff raises three objections to the Commissioner's decision, contending that: 1) the ALJ erred in determining that the claimant has the residual functional capacity to perform a reduced range of sedentary work when the consultative examining physician indicated that the claimant would be able to sit for four hours in an eight hour day and stand/walk for two hours in an eight hour day; 2) the ALJ erred in improperly relying on the testimony of the Vocational Expert, after posing a hypothetical question to the Vocational Expert that did not contain all of the limitations of Plaintiff; and 3) the ALJ erred in his credibility determination. Although Plaintiff does not appear to address

-4-

his third issue in his brief, the Court agrees with Plaintiff's general contention that the administrative decision is not adequately supported by substantial evidence, and thus, must be reversed.

**Treating Physicians**

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally

entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, the record includes several treatment records and opinions from Plaintiff's treating physicians, most of whom have treated Plaintiff over the course of many years, as well as opinions from examining and non-examining consultants. The medical records indicate that Plaintiff's condition results in crises of varying frequency and intensity, requiring surgery and treatment with a variety of narcotic pain medications over the years, and resulting in documented visual difficulties.

In March 1999, well prior to the alleged date of onset, Thomas Katta, MD, Plaintiff's treating hematologist, opined that Plaintiff was "totally disabled" due to his sickle cell anemia, noting that he would continue to have "moderate pain in most of his joints." (R. 262). The treatment records from January 1999 through August 2004 note Plaintiff's many complaints of pain (R. 245-65). In a Medical Source Statement dated November 2004, Dr. Katta opined that Plaintiff could lift or carry less than 10 pounds occasionally and frequently; could stand and/or walk less than 2 hours in an eight hour workday; could sit less than six hours; was limited in upper extremities pushing and pulling, and was limited in manipulative functions, environmental limitations and in seeing, hearing and speaking (R. 294-296).

The record also contains treatment records from hospital stays, and from Dr. Thomas Federico, Plaintiff's treating general practice physician since 2002. In July 2003, before the alleged onset date, Plaintiff presented to the emergency room, experiencing a sickle cell crisis and chest pain (R. 172-85). He was assessed with pleurisy, and given pain medication (R. 184). He presented to Dr. Thomas Federico in a follow-up visit, and was assessed with a joint crisis of his sickle cell disease (R. 329). Plaintiff returned to Dr. Federico in August 2003, complaining of left hip and knee pain "which he is afraid is another joint crisis." (R. 328). In October 2003, Plaintiff returned, complaining of leg and

knee and hip pain (R. 327). By November 13, 2003, Plaintiff was complaining of persistent pain in the left hip, and was concerned it was related to the sickle cell crisis  He was given Darvocet, in addition to the previous medications and started on Effexor "for his depression secondary to his chronic disease." (R. 326).

Plaintiff continued to see Dr. Federico through 2006. The treatment records show numerous complaints of hip pain (R. 308), knee pain and shoulder pain (R. 309, 380, 383), but by November 2005, he was deemed "stable" (R. 380). On a June 19, 2006 visit, it was noted that Plaintiff was having intermittent pain crises, with a new onset of shoulder pain (R. 383), but Plaintiff was "controlled on medications without any complications" at that time. That same day, Dr. Federico completed a medical assessment, characterizing Plaintiff's pain as moderate, and noting that the symptoms of his disease (described as acute joint pain, chronic fatigue and retinopathy) would frequently interfere with his attention and concentration (R.344-49). Dr. Federico opined that Plaintiff could sit for a total of two hours and stand/walk for a total of two hours in an eight-hour day; could rarely lift ten pounds, and was likely to be absent from work more than four days a month (R. 348).

Plaintiff presented to his treating orthopedist, W. Kevin Cox, M.D., on November 4, 2003, complaining of pain in the left hip and thigh (R. 222). X rays revealed severe left hip degeneration from sickle cell disease, and hip replacement surgery was discussed. *Id.* On follow-up visit in December, Plaintiff complained of increasing pain (R. 222-23). A MRI of the hips taken on February 3, 2004 revealed findings consistent with avascular necrosis of the bilateral hips (R. 250). On April 12, 2004, Plaintiff underwent a total left hip arthroplasty (R. 189-191).[2]

---

[2] During his hospital stay, Plaintiff was was seen by Dr. V. Iyengar for an evaluation of what was described as a painful crisis (R. 195-6). Plaintiff reported that he experienced minor crises about once every 2 to 3 months and a major crises about once every year to three years. Impression was acute sickle crisis in the postoperative state and the pain regime remained the same. *Id.* Plaintiff was to follow-up with his hematologist, Dr. Katta (R. 196). On August 24, 2004, Plaintiff returned to Health
(continued...)

Thereafter, Plaintiff returned to Dr. Cox in July 2004, indicating that his left hip was doing well, but he was experiencing increased pain in his right hip (R. 215). Dr. Cox indicated that x-rays revealed bony changes in the right hip with cystic changes in the femoral head and diminution of the joint space. Impression was right hip degeneration secondary to sickle cell disease. Plaintiff had a right total hip arthroplasty on April 25, 2005, and shortly after showed improvement (R. 353-54). By July 2005, Plaintiff reported doing very well with regards to his hips and had no complaints (R. 351). Dr. Cox opined that Plaintiff should be in a position "which is essentially sedentary." (R. 351).

On June 23, 2004, Plaintiff presented to his treating opthamologist, who noted that he was experiencing vitreous hemorrhages in both eyes (R. 270). Plaintiff continued to treat with Dr. Lehr for persistent blurred vision. He was assessed with vitreous hemorrhage due to sickle cell, which was "clearing slowly" and chronic vitreous hemorrhage – "clearing well." (R. 483). As of April 28, 2006, Plaintiff returned to Dr. Lehr indicating that his vision had not cleared (R. 387). A note from Dr. Lehr dated September 25, 2006, indicated that Plaintiff was considered legally blind in the left eye and best corrected vision of 20/60 in the right eye. (R. 497). On November 6, 2006, Dr. Lehr noted that Plaintiff continued to have hemorrhages secondary to the sickle cell anemia. (R. 481). As of July 31, 2007, Dr. Lehr noted that Plaintiff continued to be legally blind with a visual acuity of 20/count fingers in the left eye (R. 498).

In addition to the treatment records and opinions, on December 2, 2004, Plaintiff presented for a consultative examination performed by Dr. Alex Perdomo (R. 297-98). During the examination, Dr. Perdomo noted a limited range of motion in both hips, with very painful internal and external

---

[2](...continued)
Central emergency room in severe pain with another sickle cell crisis, which had lasted for six days (R. 229-235).

rotation of the hips. Plaintiff could walk without any difficulty, did not need an assistive device, sat comfortably, and could get on and off the exam table without problem, although he complained of pain with prolonged sitting or bending (R. 297). Dr. Perdomo found Plaintiff's extremities showed no edema, cyanosis, clubbing, or ulceration, and had good distal pulses (R.. 298). Dr. Perdomo found Plaintiff was able to squat, and was able to stand on his toes and heels, but complained of pain while doing so (R. 298). Impression was sickle cell anemia, history of avascular necrosis, history of recurrent vitreous hemorrhage, nicotine dependence, and overweight. With respect to Plaintiff's residual functional capacity, Dr. Perdomo opined that he could stand and walk for two hours in an eight-hour workday, sit for four hours in an eight-hour workday, could lift up to twenty pounds, and should avoid bending, stooping, crouching, squatting or kneeling. *Id.*

As is clear, every treating physician found Plaintiff to be significantly limited, and the consultative opinion was in accord. Nonetheless, the ALJ discredited the opinions of Dr. Federico and Dr. Katta, finding them to be inconsistent with the opinion of Dr. Cox and inconsistent with or unsupported by the treatment notes (R. 26). This finding is not supported by substantial evidence.

With respect to Dr. Federico's opinion, the ALJ found that the opinion was inconsistent with his examination notes of that same day (R. 26). As set forth above, it is true that Dr. Federico did not note particularly disabling symptomology on that specific visit, but the Court finds focusing on one visit ignores the totality of the treatment notes, as well as the nature of the disease. As the Eleventh Circuit has recognized, sickle cell crises are

> painful episode[s] in the life of a person affected with sickle cell anemia. [They] occur[] when the sickle cells (red blood cells) form masses that obstruct the flow of blood to various parts of the body. The limbs and joints are the most commonly affected parts, but the central nervous system, the lungs, and the abdomen may also be involved.

*Shinn ex rel. Shinn v. Commissioner of Social Sec.*, 391 F.3d 1276, 1277-78 (11th Cir. 2004) (internal citation omitted). Here, the medical record establishes that Plaintiff had significant recurrent limitations as a direct result of his periodic crises. He was routinely medicated with narcotics, had to undergo hip replacements at an early age, and the treatment records are replete with complaints of pain and complications, such as repeated vitreous hemorrhage. Plaintiff testified at his hearing that he experiences pain crises three to five times a month (R. 524), and it normally takes about three days to get the pain under control (R. 527). A finding that the disease is *presently* stable on that particular visit in no way compromises an opinion that the totality of symptoms of the disease was disabling in this particular individual.

Similarly, with respect to Dr. Katta's opinion, it is true that he did not provide specific references to objective findings supporting his opinion, but a review of his treatment notes indicates that, as a hematologist, he treated Plaintiff for this condition consistently for years, during which Plaintiff complained of pain and was occasionally hospitalized with acute crises. As noted above, the regulations provide that when a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). Here, a specialist in the disease treated Plaintiff over the course of many years and rendered an opinion that is consistent, in large measure, with that of Plaintiff's other long time treating provider *and* the consultative examiner. There is no evidence that the ALJ took any of those factors into account in determining the weight to be given this opinion.

The Court is likewise not persuaded by the ALJ's reliance on the opinion of Dr. Cox to support a conclusion that Plaintiff was able to perform sedentary work. Dr. Cox is an orthopedist who treated Plaintiff for his long history of difficulty with his hips. He was not treating Plaintiff for his retinopathy or for any other complication resulting from his sickle cell disease. Thus, Dr. Cox's opinion, following surgical replacement of *both* hips, that Plaintiff could perform a sedentary position is necessarily an opinion limited to the orthopedic impact of the hip replacement. As such, it is not, in fact, inconsistent with the opinion of the treating hematologist or internist or opthamologist. The ALJ's evaluation of the treating physicians opinions is not supported by substantial evidence.

Further, the ALJ, while noting the findings of Dr. Perdomo, did not state what weight, if any, he gave to that opinion. The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefore." *Sharfarz v. Bowen*, F.2d 278, 279 (11th Cir. 1986). Considering the record as a whole, the failure to do so here requires reversal.

**Vocational Expert testimony**

Case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). An ALJ, however, is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford v. Commissioner of Social Security,* 363 F. 3d 1155, 1158 (11th Cir. 2004).

Here, Plaintiff contends that the hypothetical presented was inadequate in that it did not include the limitations placed by Dr. Perdomo. To the extent the Court has already concluded that

the ALJ's failure to weigh that opinion and either accept it or adequately reject it is grounds for remand, the Court cannot yet evaluate whether failure to include that limitation was also error. As a practical matter, if the ALJ were to adopt the opinions of either Drs. Katta, Federico or Perdomo, it is likely that Plaintiff would be found disabled without the necessity of vocational testimony, as none of the three doctors opined that Plaintiff could perform a full time job on a regular and continuing basis. *See Kelly v. Apfel*, 185 F.3d 1211, 1214-15 (11th Cir. 1999) (at step five of the sequential evaluation, "only an ability to do full-time work will permit the ALJ to render a decision of not disabled"and citing Social Security Ruling 96-8p: "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Even if the Court were to find, however, that the RFC as determined by the ALJ in this case was adequately supported (which it does not), the ALJ's conclusion that Plaintiff could do other work in the national economy is not supported by substantial evidence.

At hearing, the ALJ asked the Vocational Expert to assume that the hypothetical person "would be restricted to perform sedentary type work, not requiring good bilateral vision." (R. 543). The expert testified that the hypothetical person could not perform the claimant's past relevant work. The ALJ then asked: "Are there any jobs in the national economy that a person with those restrictions could perform?" The expert answered:

> VE: Again, *I don't know – they aren't classified according to bilateral vision*. There are some sedentary jobs, you know, that he could, that he could do. *I'm not sure whether they would require, again, it's not classified – each job's not classified as far as vision is requiring good, not present, limited, whatever.* One would be information clerk –
> ALJ: Um-hum
> VE: --- still might be *a possibility*. That DOT 237.365-022. That's in the sedentary category.
> ALJ: Yeah, could you repeat the DOT number?
> VE: Yes, sir, 237.365-022. That's in the sedentary category, SVP of four, semiskilled. In the national economy there would be 55,000, in Florida there would be 1,500.

> *ALJ: And how much vision would that require?*
> *VE: I think that would require mainly answering questions of people who came into a building or a hall as to where things might be located.*
> ALJ: Okay, any other job that you may think about?
> VE: A hand packager. That's packager, DOT number 559.687-014. That's in the sedentary category, SVP or two, unskilled. In the national economy, there would be 69,000, in Florida there would be 6,500.

(R. 543-44 – emphasis added).

Thereafter, the ALJ included the additional restrictions of walking for a block or two; sit for twenty minutes at a time; stand for ten minutes at time; lift and carry ten pounds; and "vision is restricted which means that he would not, he would not have good bilateral vision at all times." (R. 544-545). The expert indicated that such a person would not be able to do past relevant work and, when asked if he could do other work within the national economy, the expert stated the following:

> VE: Again, the ones I mentioned previously, the sedentary ones, again, with not having more information as to – these are not classified as to whether good bilateral vision was required, but does give possibilities, I think it could be probable.

(R. 545).

At step five, the ALJ must articulate specific jobs that a claimant is able to do and this finding "must be supported by substantial evidence, not mere intuition or conjecture." *Wilson v. Barnhart*, 284 F. 3d 1219, 1227 (11th Cir. 2002). An admission that the expert does not know if a person so limited could work at a particular job, but "it could be probable" does not meet this standard. The finding that Plaintiff could perform other work in the national economy is not supported by substantial evidence.

## *CONCLUSION*

The determination is not supported by substantial evidence and was not made in accordance with proper legal standards. As such, the decision is **REVERSED and the case is REMANDED** for additional consideration with respect to the formulation of Plaintiff's residual functional capacity,

including an explanation as to the weight given to each medical opinion, and for additional proceedings, as necessary, to evaluate the matter at step five. The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 1, 2010.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record